1
2
3
4
5
6
7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ABNER EUGENIO
     DIGHERO-CASTANEDA,
11              Petitioner,              No. 2:12-cv-2367 DAD

12        vs.

13   JANET NAPOLITANO, et al.,

14              Respondents.             ORDER

15   _____/

16              Petitioner is a federal detainee proceeding through counsel with a petition for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The parties in this action have consented to

18   proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Petitioner

19   claims that he is being improperly detained under the mandatory detention provisions of the

20   Immigration and Nationality Act (INA), in violation of 8 U.S.C. § 1226(c) and his Fifth

21   Amendment right to due process.  Petitioner seeks an order:  (1) declaring that his detention is

22   governed by 8 U.S.C. § 1226(a) and not § 1226(c); (2) ordering the immigration judge to hold a

23   bond determination hearing under 8 U.S.C. § 1226(a)(2); and (3) preventing the respondents

24   from transferring him to another prison during the pendency of this action.  Upon careful

25   consideration of the record and the applicable law, the undersigned will grant petitioner's

26   application for habeas corpus relief.

## I. Background

Petitioner, a thirty-one year old native of Guatemala, has resided in the United States since 1981.  (Doc. No. 1 at 5.)  He has been a lawful permanent resident of the United States since 1992.  (Doc. 9-1 at 2.)  Petitioner is currently married to a United States citizen. (Doc. No. 1 at 7.)

Petitioner's father, who was not a United States citizen, left this country in approximately 1990, when petitioner was eight years old.  (Id. at 6.)  Petitioner's mother became a naturalized United States citizen on May 20, 1997, when petitioner was fifteen years old.  (Id. at 5.)  On August 9, 2012, in the San Francisco County Superior Court, petitioner's mother filed for dissolution of her marriage to petitioner's father.  (Id. at 6.)  If the petition for dissolution of marriage is granted and the Superior Court finds that petitioner's parents were legally separated when his custodial parent naturalized, petitioner would automatically acquire United States citizenship.  (Id.) (citing Minasyan v. Gonzales, 401 F.3d 1069 (9th Cir. 2005)).

On October 2, 2008, petitioner was convicted in the San Francisco County Superior Court of grand theft in violation of California Penal Code § 487(c), and was sentenced to sixteen months in state prison.  (Doc. No. 1 at 6.)  He completed service of his sentence and was released on March 3, 2009.  (Id.)  Because of this conviction, on July 24, 2012, more than three years after his release from state prison, Immigration and Customs Enforcement (ICE) officers of the Department of Homeland Security (DHS) served petitioner with a Notice to Appear, charging him with removability under the INA for having been convicted of two crimes of moral turpitude and for having been convicted of an aggravated felony theft offense.[1]  (Doc. No. 9 at 2; Doc. No. 9-1 at 2; Doc. No. 9-2 at 2.)  Petitioner was arrested on that same date and

---

[1]  Petitioner was previously convicted of a theft offense in 2002.  (Doc. No. 9-2 at 2.) According to the records before this court, this 2002 conviction was also one of the grounds for petitioner's arrest and detention by immigration officials in 2012.  (Id.)  However, in their respective pleadings before this court, the parties focus solely on petitioner's 2008 grand theft conviction in the San Francisco County Superior Court.

1   has remained in ICE custody until the present time.  (Doc. No. 1 at 2.)[2]

2         Petitioner sought a bond hearing before an immigration judge.  (Doc. No. 9-1.)

3   He argued that a bond should be set in his immigration case because he would obtain United

4   States citizenship when his mother's divorce became final, making it substantially unlikely that

5   the government would ultimately prevail on the removal charges against him.  (Id. at 2-3.)  The

6   immigration judge denied that request, reasoning that petitioner was a lawful permanent resident

7   of the United States until such time as he was found to be a citizen, and that his 2008 grand theft

8   conviction subjected him to mandatory custody under the INA.  (Id. at 3.)  However, the

9   immigration judge also indicated that she would revisit the matter if the divorce proceedings

10  between petitioner's mother and father became final.  (Doc. No. 1-2 at 1.)

11        Petitioner appealed the immigration judge's decision to the Board of Immigration

12  Appeals (Board).  (Doc. No. 9-2.)  On October 26, 2012, the Board dismissed petitioner's appeal,

13  reasoning that the mere possibility petitioner would become a United States citizen "is too

14  speculative in nature to warrant a holding that it is 'substantially unlikely' that the DHS will

15  prevail on the charges of removability."  (Id.)  Relying on its decision in Matter of Rojas, 23 I&N

16  Dec. 117 (BIA 2001), the Board concluded that petitioner was subject to the mandatory detention

17  provisions of 8 U.S.C. § 1226(c) by virtue of his conviction for grand theft, even though there

18  was a three-year gap in time between his release from state custody with respect to his removable

19  criminal offense and his immigration arrest.  (Id. at 2-3.)

20        Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2241 in this court on

21  September 14, 2012.

22  /////

23

24        [2]  It is not clear from the record before this court why immigration agents did not arrest
25  petitioner earlier.  However, there is no evidence indicating that petitioner was hiding or that
    immigration officials did not know his whereabouts.  Moreover, petitioner had not been
26  incarcerated or charged with any criminal offense following his release from state prison in 2009.
    (Doc. No. 1 at 6.)

**II. Jurisdiction, Venue, and Standards of Review**

Pursuant to 28 U.S.C. § 2241, relief by way of a writ of habeas corpus extends "to a Department of Homeland Security detainee who is 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241(c)(3)." Rianto v. Holder, No. CIV 11-00137 PHX FJM (MEA), 2011 WL 3489623, at *2 (D. Ariz. May 25, 2011). See also Maleng v. Cook, 490 U.S. 488, 490 (1989). This court has subject matter jurisdiction over the instant petition pursuant to § 2241 because petitioner is in custody under the authority of the United States and he claims that his mandatory detention without an individualized bond hearing is not statutorily authorized and that he is being detained in violation of federal right to due process. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(e) because respondents are officers or employees of the United States or an agency thereof acting in their official capacity or under color of legal authority, and petitioner is being detained in this district, specifically at the Yuba County jail.

Named as defendants in this action are Janet Napolitano, Secretary of the United States Department of Homeland Security; Eric Holder, Attorney General of the United States; John Morton, Director of Immigration and Customs Enforcement; Craig Meyer, Field Office Director of Immigration and Customs Enforcement; and Yuba County Sheriff Steven Durfor. In Rumsfeld v. Padilla, 542 U.S. 426, 428 (2004), the United States Supreme Court held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."[3] Accordingly, the court will proceed to address the merits of petitioner's claims.

---

[3] Respondents do not challenge either petitioner's implicit suggestion that Sheriff Durfor is his immediate custodian or this court's personal jurisdiction over the petitioner. Accordingly, respondent has effectively waived this issue. See Padilla, 542 U.S. at 452 ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government"); Smith v. Idaho, 392 F.3d 350, 355 & n.6 (9th Cir. 2004) (a habeas court may exercise its discretion to avoid delay and waste of resources by recognizing a waiver instead of requiring formal amendment of the petition).

**III. Petitioner's Claims**

Petitioner challenges the lawfulness of his detention under the mandatory detention statute of the INA, 8 U.S.C. § 1226(c).  (Doc. No. 1 at 8.)  Petitioner raises two grounds for relief.  First, petitioner claims that he is not subject to mandatory detention under § 1226(c) because immigration authorities failed to detain him immediately, or even shortly, after his release from state prison on his qualifying felony offense, as required by the plain language of the statute, instead waiting until more than three years before doing so.  (Id.; Doc. No. 2 at 4-11.) Petitioner argues that the DHS "has stretched its power through an improper reading of the statute to allow it to detain people without bond even if years have passed since their last contact with law enforcement." (Doc. No. 2 at 2.)  Petitioner contends that his detention is governed instead by 8 U.S.C. § 1226(a), pursuant to which he is entitled to a bond determination hearing before an immigration judge prior to being retained in immigration custody.  (Doc. No. 1 at 8-10; Doc. No. 2 at 10.)

In his second ground for relief, petitioner claims that his detention pending his removal proceedings without any individualized bond hearing to determine whether he poses a danger or is a flight risk violates his Fifth Amendment right to due process.  (Doc. No. 1 at 2, 9-10; Doc. No. 2 at 11-12.)

Respondents counter that the mandatory detention requirements of 8 U.S.C. § 1226(c) attach not only when an alien is taken into immigration custody immediately after his or her release from prison on the underlying felony conviction, but also when there has "been a delay in effecting that custody." (Doc. No. 9 at 2.)  In general, respondents argue that:  (1) the statutory history of 18 U.S.C. §1226(c) illustrates that the DHS may detain individuals without an opportunity to be released on bond even if significant time has passed since their release from prison; (2) the relevant language of § 1226(c) is ambiguous in this regard and the Board's interpretation of that language is a reasonable one; and (3) requiring that respondent provide a bond hearing to petitioner would impose an improper sanction on them for negligently failing to

1  apprehend him sooner.  (Id. at 3-20.)  Respondents contend that, given these factors, petitioner is

2  required to be detained by ICE pursuant to the mandatory custody provisions of § 1226(c), and is

3  not entitled to a bond hearing pursuant to § 1226(a).  (Id at 3-21.)

4  **IV.  Analysis**

5          The issue before the court in the pending federal habeas petition is whether

6  petitioner is subject to mandatory immigration detention even though he was arrested after a

7  three year gap in time between his release from custody on his underlying grand theft conviction

8  and the date of his arrest by immigration officials.  The parties agree that although one circuit

9  court and several district courts have considered this issue, there is no binding Ninth Circuit

10  precedent and the issue presented is one of first impression in the Eastern District of California.[4]

11          Title 8 U.S.C. § 1226(a), which was enacted as part of the Illegal Immigration

12  Reform And Immigrant Responsibility Act of 1996 (IIRIRA), provides the Attorney General with

13  the authority to arrest, detain, and release an alien during the pre-removal-order period pending

14  the decision as to whether the alien will be removed from the United States.  Specifically, the

15  statute provides as follows:

16          (a) Arrest, detention, and release

17          On a warrant issued by the Attorney General, an alien may be
            arrested and detained pending a decision on whether the alien is to
18          be removed from the United States.  Except as provided in
            subsection (c) of this section and pending such decision, the
19          Attorney General –

20           (1) may continue to detain the arrested alien; and

21           (2) may release the alien on—

22            (A) bond of at least $1,500 with security approved by, and
              containing conditions prescribed by, the Attorney General; or

23
              (B) conditional parole; but
24

25          [4] Respondent informs the court that this issue is currently pending in the Third Circuit
26  Court of Appeals in two cases which have been fully briefed and are awaiting argument.  (Doc.
    No. 9 at 9.)

1     (3) may not provide the alien with work authorization (including
an "employment authorized" endorsement or other appropriate
2     work permit), unless the alien is lawfully admitted for permanent
residence or otherwise would (without regard to removal
3     proceedings) be provided such authorization.

4     (b) Revocation of bond or parole

5     The Attorney General at any time may revoke a bond or parole
authorized under subsection (a) of this section, rearrest the alien
6     under the original warrant, and detain the alien.

7  (Emphasis added.)

8         Pursuant to 8 U.S.C. § 1226(c)(1)(B), however, certain aliens who have been

9  convicted of crimes are subject to mandatory detention pending the outcome of removal

10  proceedings.  That code section provides in relevant part:

11     The Attorney General <u>shall</u> take into custody any alien who—

12      (A) is inadmissible by reason of having committed any offense
covered in section 1182(a)(2) of this title,
13

14      (B) is deportable by reason of having committed any offense
covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of
this title, . . .
15

16      <u>when the alien is released</u>, without regard to whether the alien is
released on parole, supervised release, or probation, and without
regard to whether the alien may be arrested or imprisoned again
17     for the same offense.

18     (2) Release

19     The Attorney General may release an alien described in paragraph
(1) only if the Attorney General decides pursuant to section 3521
20     of Title 18 that release of the alien from custody is necessary to
provide protection to a witness, a potential witness, a person
21     cooperating with an investigation into major criminal activity, or
an immediate family member or close associate of a witness,
22     potential witness, or person cooperating with such an investigation,
and the alien satisfies the Attorney General that the alien will not
23     pose a danger to the safety of other persons or of property and is
likely to appear for any scheduled proceeding.  A decision relating
24     to such release shall take place in accordance with a procedure that
considers the severity of the offense committed by the alien.

25

26  (Emphasis added).  Detention under § 1226(a) is discretionary and permits release on bond by the

1   Attorney General, while detention under § 1226(c) is mandatory and does not permit release on

2   bond.

3            The parties dispute the meaning of the phrase "when the alien is

4   released"contained in 8 U.S.C. § 1226(c)(1)(B).  Petitioner argues that since he was not taken

5   into immigration custody immediately upon his release from criminal confinement, his ongoing

6   detention without a bond hearing is improper under the language of the statute.  In Matter of

7   Rojas, 23 I. & N. Dec. 177 (BIA 2001), the BIA held that the "when the alien is released" clause

8   of § 1226(c) mandates that aliens who have been convicted of certain enumerated offenses be

9   detained, without the possibility of release on bond, "regardless of when they were released from

10  criminal confinement and regardless of whether they had been living within the community for

11  years after their release." 23 I. & N. Dec. at 122.  In Rojas, the ICE had waited two days after the

12  petitioner's release from incarceration before taking him into immigration custody.  Id.  The BIA

13  determined that Rojas was subject to mandatory detention pursuant to § 1226(c) even though he

14  was not taken into custody until two days after, rather than immediately following his release

15  from criminal confinement.  Id. at 127

16           Respondents assert that this court should defer to the BIA's construction of §

17  1226(c) set forth in Rojas, under the principles set forth in Chevron U.S.A., Inc. v. Nat'l Res.

18  Def. Council, Inc., 467 U.S. 837 (1984).  (Doc. No. 9 at 15-20.)  In Chevron, the United States

19  Supreme Court established a two-step process for reviewing an administrative agency's

20  interpretation of a statute.  467 U.S. at 842–43.  Under that test, at step one the Court must

21  consider "whether Congress has directly spoken to the precise question at issue.  If the intent of

22  Congress is clear, that is the end of the matter."  Id.  If, however, "the statute is silent or

23  ambiguous with respect to the specific issue," then the Court must proceed to step two and

24  determine whether the agency's determination is "based on a permissible construction of the

25  statute."  Id.  Here, respondents argue that the language "when the alien is released" is ambiguous

26  and that the agency determination that a qualifying alien may be taken into custody any time after

8

1    his/her release from prison is a permissible construction of § 1226(c).  (Doc. No. 9 at 15-20.)

2            In support of their position in this regard, respondents cite the decision in <u>Hosh v.</u>

3    <u>Lucero</u>, 680 F.3d 375 (4th Cir. 2012).  In <u>Hosh</u>, the Fourth Circuit agreed that the statutory

4    language "when the alien is released" was ambiguous, that the BIA's interpretation of § 1226(c)

5    as set forth in <u>Rojas</u> was reasonable, and that the BIA decision must be accorded deference under

6    the decision in <u>Chevron USA, Inc</u>.  <u>Hosh</u>, 680 F.3d at 378.  Thus, the Fourth Circuit held that an

7    alien is subject to mandatory detention under § 1226(c) even if there is a gap between the time of

8    his or her release from criminal incarceration and the time of detention by immigration

9    authorities.  <u>Id.</u> at 380.

10           Petitioner argues, on the other hand, that the statutory language "when the alien is

11   released" unambiguously means that the alien must be detained immediately or very shortly after

12   his or her release from prison on the underlying felony conviction in order for mandatory

13   detention under § 1226(c) to be applicable.  (Doc. No. 2 at 2, 4-8.)  Petitioner claims that since he

14   was not detained by immigration officials until more than three years after his release from state

15   prison, he may be detained by the Attorney General pending the removal decision only under the

16   discretionary provision of § 1226(a), and that he is entitled to a bond hearing under § 1226(a)(2).

17   Petitioner analogizes to cases decided prior to the IIRIRA, which construed similar language in

18   an analogous statute to mean "immediately" or very shortly after release from incarceration.  (<u>Id.</u>

19   at 8-9.)  Petitioner also argues that DHS has the ready ability to identify removable aliens in

20   sufficient time to detain appropriate individuals immediately upon their release from criminal

21   confinement.  (<u>Id.</u> at 9-10.)  He notes that if DHS officials fail to detain an individual

22   immediately after their release from prison, as required by § 1226(c), they may still seek the

23   detention of the individual so long as they provide a bond hearing to determine if the person

24   poses a safety or flight risk.  (<u>Id.</u> at 10.)  Therefore, according to petitioner, an interpretation of 8

25   U.S.C. § 1226(c) requiring arrest immediately after one's release from incarceration on the

26   underlying removable offense would not impose any undue burden on respondents.  Finally,

citing the decisions in <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976) and <u>Flores-Chavez v. Ashcroft</u>, 362 F.3d 1150, 1160-61 (9th Cir. 2004), petitioner argues that if this court agrees with respondent's interpretation of § 1226(c), it should nonetheless find that subjecting him to mandatory detention under § 1226(c) violates his Fifth Amendment right to procedural due process.  (<u>Id.</u> at 11-12.)

As explained above, the only Circuit court to address the issue raised by the petitioner in this federal habeas action concluded that an alien was subject to mandatory detention under 8 U.S.C. 1226(c) even if there was a gap in time between his release from confinement in connection with the underlying removable felony conviction and the date of his arrest by immigration officials.  <u>See Hosh</u>, 680 F.3d at 375.  Some district courts to have considered the issue have reached the same conclusion.  <u>See e.g.</u>, <u>Khetani v. Petty</u>, 859 F. Supp.2d 1036, 1038-39 (W.D. Mo. 2012) ("[Section 1226(c)] is vague as to the meaning of 'when' and . . . deference is due to the BIA's interpretation. . . ."); <u>Espinoza-Loor v. Holder</u>, No. 11-6993(FSH), 2012 WL 2951642 (D. N.J. July 2, 2012) (petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) even though he was not detained until more than four years after his release from state prison); <u>Castillo v. Aviles</u>, Civil Action No. 12-2388, 2012 WL 5818144, at *4 (D N.J. Nov. 15, 2012) (same); <u>Santana v. Muller</u>, No. 12-cv-430, 2012 WL 951768 at *4 (S.D.N.Y. Mar. 12, 2012) (holding that § 1226(c) is ambiguous because the word "when" could mean "at the moment of release, or it could mean at any time following release"); <u>Guillaume v. Muller</u>, No. 11-cv-8819, 2012 WL 383939 at *4 (S.D.N.Y. Feb. 7, 2012) (phrase "when the alien is released" ambiguous because it could reasonably be construed in different ways); <u>Mendoza v. Muller</u>, No. 11-cv-7857, 2012 WL 252188 at *3 (S.D.N.Y. Jan. 25, 2012) (mandatory detention provision contained in § 1226(c) applies even though the petitioner not taken into immigration custody until more than two years after his release from custody on the deportable crimes); <u>Diaz v. Muller</u>, No. 11-4029 (SRC), 2011 WL 3422856 at **4-5 (D. N.J. Aug. 4, 2011) (holding that the statutory language was ambiguous).

1    However, many other district courts to have reached this precise issue, including

2  all of the district courts in the Ninth Circuit to have considered it, have concluded that 8 U.S.C. §

3  1226(c) does not apply unless the petitioner is taken into custody immediately or very shortly

4  after his release from prison on the underlying removable offense.  See e.g., Valdez v. Terry, 874

5  F. Supp.2d 1262 (D. N.M. 2012) (detention under § 1226(c) requires the immediate detention of

6  the alien by immigration officials upon the alien's release from confinement); Quezada-Bucio v.

7  Ridge, 317 F. Supp.2d 1221 (W.D. Wash. 2004) (§ 1226(c) applies only to those aliens taken

8  into immigration custody immediately after their release from state custody and did not apply

9  where the petitioner was taken into immigration custody two years after he was released from

10  state custody on the underlying removable offense); Alikhani v. Fasano, 70 F. Supp.2d 1124,

11  1130 (S.D. Cal. 1999) (finding, in dicta, that because the term "when" is defined as "just after the

12  moment that," the statutory language clearly intends that the mandatory detention provision only

13  applies to aliens who are detained at the time of their release from criminal confinement); Kerr v.

14  Elwood, No. 12-6330 (FLW), 2012 WL 5465492, at *3 (D. N.J., Nov. 8, 2012) (the "when the

15  alien is released" language requires the Government to act immediately upon an alien's release

16  from criminal custody; when the Government does not act immediately, the alien is properly

17  considered to be held under § 1226(a)); Nimako v. Shanahan, No. 12-4909 (FLW), 2012 WL

18  4121102 (D. N.J. Sept. 18, 2012) (petitioner's detention was governed by 8 U.S.C. § 1226(a)

19  because DHS did not take the petitioner into custody when he was released from criminal

20  incarceration for an offense underlying the removal charges, but instead DHS waited almost five

21  years before taking him into custody); Bogarin-Flores v. Napolitano, No. 12cv0399 JAH (Wmc),

22  2012 WL 3283287, at *3 (S.D. Cal. Aug. 10, 2012) (petitioner was entitled to bond hearing

23  under 8 U.S.C. § 1226(a) where he was detained by immigration authorities two years after being

24  released from state prison); Rianto, 2011 WL 3489623 at *5 (petitioner was entitled to a bond

25  hearing where he was detained more than three years after being released from state prison and

26  there was no "nexus" between petitioner's removable crimes and his detention by immigration

1   authorities); Zabadi v. Chertoff, No. C 05-03335 WHA, 2005 WL 3157377 (N.D. Cal. Nov. 22,

2   2005) (DHS was not authorized under the analogous statute to § 1226(c) to arrest petitioner

3   given a two-year delay in seeking to take him into custody; DHS "need not act immediately but

4   has a reasonable period of time after release from incarceration in which to detain").[5]  As noted

5   by one district court in New York, "the majority of courts have held that the 'when . . . released'

6   clause connotes immediacy in accord with petitioner's position regarding the interpretation of [§

7   1226(c)]."  Guillaume, 2012 WL 383939 at *5.  See also Bogarin-Flores, 2012 WL 3283287, at

8   *3 (concluding that the weight of authority leans towards petitioner's viewpoint on this issue).

9          The court concludes that petitioner is not subject to mandatory detention under §

10  1226(c) and will therefore grant petitioner's application for habeas corpus relief.  The court

11  agrees with the reasoning of the decisions of the majority of courts to have considered this issue,

12  including all other district courts in this Circuit, that 8 U.S.C. § 1226(c) requires that an alien be

13  taken into custody immediately or shortly after release from custody on the removable offense.

14  The court finds that the plain language of 8 U.S.C. § 1226(c) is unambiguous with respect to the

15  requirement that the DHS detain individuals under that section "upon release" from criminal

16  custody.  Accordingly, the court may not defer to the decision of the BIA in Rojas that the statute

17  is ambiguous and allows for immigration mandatory detention even after a lengthy gap in time

18  between release from criminal custody and arrest by immigration officials.  Chevron, 467 U.S. at

19  843-44.[6]

20  /////

21

22         [5] It should be noted that in Saysana v. Gillen, 590 F.3d 7, 16 (1st Cir. 2009), the Circuit
23  court also stated, in dicta, that the "when released" language contained in § 1226(c) was clear and
    unambiguous.

24         [6] This court further finds that the Rojas decision is factually distinguishable from this
25  case.  The petitioner in Rojas was detained by immigration officials within two days of his
    release from criminal custody, whereas petitioner in this case was not detained by immigration
26  officials until more than three years after his release from state prison.  Accordingly, the decision
    in Rojas does not dictate the result here, in any event.

1    Because petitioner was not detained immediately upon his release from custody

2    after serving his state prison sentence for grand theft, and there was no nexus between his crimes

3    and his immigration detention, he is entitled to a bond hearing under 8 U.S.C. § 1226(a).[7]

4    **V.  Conclusion**

5    Accordingly, IT IS HEREBY ORDERED that:

6    1.  Petitioner's application for a writ of habeas corpus is granted.

7    2.  Respondents shall either release petitioner from custody under an order of

8    supervision or, within 30 days from the date of this order, afford petitioner an individualized

9    bond hearing before an immigration judge with authority to grant petitioner bail unless the

10   government establishes that he is a flight risk or a danger to the community.

11   DATED: March 15, 2013.

12

13   _Dale A. Drozd_

14   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

15   DAD:8:
     dighero-castaneda2367.hc

16

17

18

19

20

21

22

23

24

25   [7]  Because the court finds in this case that mandatory detention is not authorized under 8

26   U.S.C. § 1226(c), the court will not reach petitioner's argument that his mandatory detention
     violates his Fifth Amendment right to due process.